UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDDY MARTINEZ,<br><br>      Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION, et al.,<br><br>      Defendants. | Civil Action No. 20-3269 (APM) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT</u>**

<br>

                                              MATTHEW M. GRAVES
                                              United States Attorney

                                              BRIAN P. HUDAK
                                              Chief, Civil Division

                                              ALEXANDER SCHREIBER
                                              Special Assistant U.S. Attorney

April 25, 2023

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................................. 1

LEGAL STANDARD..................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

    I.      The FBI Properly Withheld The Two Investigative Files Under Exemption 7(A). 3

           A.      Threshold Requirements of Exemption 7 ...................................................... 4

           B.      Exemption 7(A) Applies to the Two Withheld Investigative Files ............ 5

    II.     The FBI has Satisfied its Obligation to Segregate and Release Non-Exempt Information. ................................................................................................................ 12

CONCLUSION............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ACLU, v. FBI,*
   429 F. Supp. 2d 179 (D.D.C. 2006) ............................................................................. 7
*Alyeska Pipeline Serv. v. EPA,*
   856 F.2d 309 (D.C. Cir. 1988) ............................................................................... 7, 10
*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .................................................................................................. 2, 3
*Armstrong v. Exec. Off. of the President,*
   97 F.3d 575 (D.C. Cir. 1996) ...................................................................................... 13
*Aspin v Dep't of,*
   *Def.*, 491 F.2d 24 (D.C. Cir. 1973) .............................................................................. 4
*Bevis v. Dep't of State,*
   801 F.2d 1386 (D.C. Cir. 1986) ............................................................................... 7, 8
*Blackwell v. FBI,*
   680 F. Supp. 2d 79 (D.D.C. 2010) ............................................................................... 6
*Brayton v. Off. of U.S. Trade,*
   *Rep.*, 641 F.3d. 521 (D.C. Cir. 2011) ......................................................................... 3
*Brown v. FBI,*
   873 F. Supp. 2d 388 (D.D.C. 2012) ............................................................................ 3
*Campbell v. Dep't of Just.,*
   164 F.3d 20 (D.C. Cir. 1998) ...................................................................................... 5
*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ..................................................................................................... 2
*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
   789 F.2d 64 (D.C. Cir. 1986) ...................................................................................... 8
*Crowell & Moring v. Dep't of Def.,*
   703 F. Supp. 1004 (D.D.C. 1989) ............................................................................... 7
*Ctr. for Nat'l Sec. Studies v. Dep't of Just.,*
   331 F.3d 918 (D.C. Cir. 2003) ......................................................................... 5, 7, 10
*Defenders of Wildlife v. U.S. Border Patrol,*
   623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................. 3
*Dep't of Lab.,*
   478 F. Supp. 2d 77 (D.D.C. 2007) ............................................................................. 3
*Dickerson v. Dep't of Just.,*
   992 F.2d 1426 (6th Cir. 1993) .................................................................................... 8
*Edmonds v. FBI,*
   272 F. Supp. 2d 35 (D.D.C. 2003) ......................................................................... 7, 8
*Gallant v. NLRB,*
   26 F.3d 168 (D.C. Cir. 1994) ...................................................................................... 7

*Jefferson v. Dep't of Just.*,
   284 F.3d 172 (D.C. Cir. 2002) .................................................................................... 4
*Johnson v. Exec. Off. of U.S. Att'ys*,
   310 F.3d 771 (D.C. Cir. 2002) .................................................................................. 13
*Juarez v. Dep't of Just.*,
   518 F.3d 54 (D.C. Cir. 2008) ................................................................................. 8, 9
*Kay v. FCC*,
   976 F. Supp. 23 (D.D.C. 1997) ............................................................................. 7, 9
*Keys v. Dep't of Just.*,
   830 F.2d 337 (D.C. Cir. 1987) .................................................................................. 4
*Kidder v. FBI*,
   517 F. Supp. 2d 17 (D.D.C. 2007) ............................................................................ 5
*Mapother v. Dep't of Just.*,
   3 F.3d 1533 (D.C. Cir. 1993) .................................................................................... 6
*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ................................................................................ 3
*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ................................................................................ 13
*Media Rsch. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) .......................................................................... 3
*Mendoza v. DEA*,
   465 F. Supp. 2d 5 (D.D.C. 2006) .............................................................................. 6
*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) .................................................................................. 3
*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) .................................................................................................. 5
*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1982) .................................................................................. 4
*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
   740 F.3d 195 (D.C. Cir. 2014) .................................................................................. 4
*Russell v. FBI*,
   Civ. A. No. 03-0611, 2004 WL 5574164 (D.D.C. Jan. 9, 2004) .............................. 3
*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................................ 3
*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) .............................................................................. 13
*Swan v. SEC*,
   96 F.3d 498 (D.C. Cir. 1996) .................................................................................... 6
*Tao v. Freeh*,
   27 F.3d 635 (D.C. Cir. 1994) .................................................................................... 2
*Tax Analyst v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) .................................................................................... 4

*Tipograph v. Dep't of Just.*,
   83 F. Supp. 3d 234 (D.D.C. 2015) .................................................................................. 8
*Voinche v. FBI*,
   46 F. Supp. 2d 26 (D.D.C. 1999) ..................................................................................... 6
*Weisberg v. Dep't of Just.*,
   745 F.2d 1476 (D.C. Cir. 1984) ....................................................................................... 3

**Statutes**

5 U.S.C. § 552(b) ............................................................................................................... 12
5 U.S.C. § 552(b)(7) ............................................................................................................ 4
5 U.S.C. § 552(b)(7)(A) ................................................................................................. 5, 12

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................ 2

## BACKGROUND

This matter arises out of a Freedom of Information Act ("FOIA") request Plaintiff Freddy Martinez submitted to the Federal Bureau of Investigation ("FBI") on October 31, 2018. Bender Decl. ¶ 5. In its request, Plaintiff sought "[a]ll documents mentioning James (Whitey) Bulger (September 13, 1929 – October 30, 2018), a former South Boston Mobster, whose death was widely reported in the media." *Id.* ¶ 5, Ex. A.

On November 5, 2018, the FBI acknowledged receipt of Plaintiff's FOIA request, and assigned his request no. 1421028. Bender Decl. ¶ 6. On November 19, 2018, the FBI advised plaintiff that unusual circumstances applied to the processing of his request and would delay the FBI's ability to decide the request within 20 days. *Id.* ¶ 7. Additionally, the FBI advised Plaintiff reducing the scope of the request would accelerate the process and could potentially place the request into a quicker processing queue. *Id.* Plaintiff responded by notifying the FBI that he did not wish to reduce the scope of the request. *Id.* ¶ 8.

To locate responsive records, the FBI searched its Central Records System for "James Bulger" and "Whitey Bulger," with a search cut-off date of October 30, 2018.[1] *Id.* ¶ 20. The FBI's search located numerous responsive records. Among those records are files categorically exempt under FOIA Exemption 7(A), (*id.*), including two pending investigative files. The FBI also identified records that were not categorically exempt pursuant to Exemption (7)(A) and provided those pages in its initial production of records, which resulted in the release, either in full or in part, of 1,829 pages to Plaintiff. *Id.* ¶ 58. Due to the FBI's reasonable anticipation that a review of the remaining records will yield no releasable records and Plaintiff's desire to resolve the

---

[1] By stipulation of the parties, adequacy of the search is not at issue at this stage of the proceedings. Defendants describe the search here to illustrate the types of files at issue.

application of Exemption 7(A), the parties agreed to halt the FBI's review of the records and brief the applicability of Exemption 7(A).

Consistent with the parties' agreement set forth in their Joint Status Report, the issue here is limited to the applicability of Exemption 7(A) to the two pending investigative files that are responsive to Plaintiff's FOIA request. *See* Joint Status Rpt. (ECF No. 30). The parties further agreed that while the issue of the applicability of Exemption 7(A) is pending, the FBI will halt review and processing of responsive records for segregable information as well as for underlying exemptions without waiving its right to assert those exemptions later. *Id.* If the Court finds that the FBI has properly asserted Exemption 7(A) over the two pending investigative files mentioned above, the parties intend to move for dismissal. On the other hand, if the Court rejects the applicability of Exemption 7(A) (or if the underlying basis for asserting Exemption 7(A) expires prior to the Court's decision), the FBI will resume its review for segregable information and apply other exemptions. The Court adopted the parties' proposed proceedings in this case, including their proposed briefing schedule. *See* Feb. 27, 2023 Order (ECF No. 31). The Court further directed the parties "not [to] submit a Statement of Undisputed Material Facts with this briefing unless ordered to do so by this Court." *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the

nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The "vast majority" of FOIA cases are decided on motions for summary judgment. *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d. 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motion for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment may be granted in a FOIA case upon agency affidavits that are relatively detailed, non-conclusory, and made in good faith. *See e.g.*, *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Brown v. FBI*, 873 F. Supp. 2d 388, 398 (D.D.C. 2012); *Russell v. FBI*, Civ. A. No. 03-0611, 2004 WL 5574164, at *2 (D.D.C. Jan. 9, 2004) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

## ARGUMENT

### I. The FBI Properly Withheld The Two Investigative Files Under Exemption 7(A).

The FBI properly withheld the two investigative files pursuant FOIA Exemption 7(A) because those files were compiled for law enforcement purposes and disclosure could reasonably be expected to interfere with enforcement proceedings. The FBI grouped withheld materials into

functional categories so that this Court may trace a rational link between the nature of the documents and the likely interference. As demonstrated below, this Court should grant Defendants' motion for summary judgment.

### A.     Threshold Requirements of Exemption 7

Federal agencies must meet the threshold requirement of Exemption 7 before withholding requested documents under any of its subparts. *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). Exemption 7 requires withheld records or information to be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (quoting *Aspin v Dep't of Def.*, 491 F.2d 24, 27 (D.C. Cir. 1973)) (additional citations omitted). Where "the agency's principal function is law enforcement, [courts] are 'more deferential' to the agency's claimed purpose for the particular records." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)). An agency need only show that the nexus between the agency's activity and its law enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analyst v. IRS*, 294 F.3d at 79 (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

Here, the FBI met the threshold requirement under Exemption 7 because the FBI is a law enforcement agency and two investigative files were compiled for law enforcement purposes. The FBI is "the primary investigative agency of the federal government with authority and

4

responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Bender Decl. ¶ 24. "The records at issue were compiled in furtherance of the FBI's investigation of enterprise criminal activity to which James Bulger was a party." *Id.* ¶ 25. Because the "records were compiled to document the FBI's investigation of potential crimes," (*id.*), there can be no genuine dispute that the FBI satisfied the threshold requirement of Exemption 7.

### B.  Exemption 7(A) Applies to the Two Withheld Investigative Files

FOIA exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes [when disclosure] . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In enacting 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). In fact, the D.C. Circuit has explained that "Exemption 7(A) does not require a presently pending 'enforcement proceeding'"; rather, it is sufficient that ongoing investigations are likely to lead to such proceedings. *Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 926 (D.C. Cir. 2003). The range of law enforcement purposes falling within the scope of Exemption 7(A) includes government national security and counterterrorism activities. *See, e.g., id.*; *see also Kidder v. FBI*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007). Furthermore, a law enforcement agency is entitled to deference when it asserts Exemption 7(A). *See Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 (when relating to matters of national security, the declaration must be "viewed in light of the appropriate deference to the executive on issues of national security"); *see also id.* at 927–28 ("Just as we have

deferred to the executive when it invokes FOIA Exemptions 1 and 3, we owe the same deference under Exemption 7(A) in appropriate cases," including those in which "the government's declarations raise legitimate concerns that disclosure would impair national security."). To justify the application of Exemption 7(A), the agency must demonstrate that: (1) a law enforcement proceeding is pending or prospective; and (2) disclosure of the information could reasonably be expected to cause some articulable harm to the proceeding. *Voinche v. FBI*, 46 F. Supp. 2d 26, 31 (D.D.C. 1999); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

To satisfy this burden, the agency "need not submit declarations that reveal the exact nature and purpose of its investigations." *Blackwell v. FBI*, 680 F. Supp. 2d 79, 94 (D.D.C. 2010). In fact, "Exemption 7(A) exists precisely to shield that sort of revelation." *Id.* Accordingly, documents are exempt under Exemption 7(A) where disclosure "could reveal much about the focus and scope of the [agency's] investigation." *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996); *Mendoza v. DEA*, 465 F. Supp. 2d 5, 11 (D.D.C. 2006) ("Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation.").

In this case, "[m]aterial responsive to Plaintiff's request is located in files of ongoing investigations." Bender Decl. ¶ 57. The FBI applied Exemption 7(A) to protect the two investigative files pertaining to investigations related to James Bulger. *Id.* ¶ 58. Although James Bulger is deceased, investigation of enterprise criminal activity to which he was a party continues. *Id.* ¶ 59. As such, living associates of James Bulger are targets of investigative interest, and efforts to recover assets related to enterprise criminal activity remain ongoing. *Id.* Therefore, the two investigative files at issue relate to pending and prospective enforcement proceedings.

"Release of these records would allow targeted individuals and/or foreign adversaries to critically analyze documents concerning these investigations." Bender Decl. ¶ 59. "These

6

individuals could therefore use the released information to their advantage to destroy evidence, intimidate potential witnesses, and/or evade the FBI's investigative and asset recovery efforts." *Id.* The "likelihood of witness intimidation and evidence tampering" has been held to be a sufficient concern under Exemption 7(A). *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 929; *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988) (agreeing that disclosure might identify individuals who had assisted investigation by providing documents, and would "thereby subject them to potential reprisals and deter them from providing further information"); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 55 (D.D.C. 2003) (recognizing potential harms that would result if disclosure "stifle[d] cooperation" or "le[d] to the harassment or intimidation of individuals involved in the investigations"); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997) (recognizing that an agency "need not establish that witness intimidation is certain to occur, only that it is a possibility"); *Crowell & Moring v. Dep't of Def.*, 703 F. Supp. 1004, 1011 (D.D.C. 1989) (agreeing that disclosing witnesses' identities would impair the Government's ability to obtain cooperation during an investigation).

Further, in justifying its reliance on Exemption 7(A), the FBI need not demonstrate how the release of the withheld documents would interfere with law enforcement proceedings on a document-by-document basis. *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994). Rather, Defendants may "group documents into relevant categories that are sufficiently distinct to allow a court to grasp how each . . . category of documents, if disclosed, would interfere with the investigation." *ACLU, v. FBI*, 429 F. Supp. 2d 179, 190 (D.D.C. 2006) (citing *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)). The categories relied upon, however, must be "functional"—"allowing the court to trace a rational link between the nature of the document and the alleged likely interference." *Id.* In order to utilize this categorical approach, Defendants may

"conduct a document-by-document review" of all responsive documents to assign documents to the proper category and "explain to the court how the release of each category would interfere with enforcement proceedings." *Id.*

Here, the FBI conducted a "document-by-document review" (Bender Decl. ¶ 28) of the two investigative files at issue and grouped the withheld material into two categories: "Evidentiary/Investigative Materials" and "Administrative Materials."[2] As set forth below, these "functional" categories "trace a rational link between the nature of the documents and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986). Therefore, the FBI has provided sufficient detail to meet their burden under Exemption 7(A). *See, e.g.*, *Edmonds*, 272 F. Supp. 2d at 54-55 (upholding agency's declaration that grouped withheld material into two categories, "evidentiary" and "investigative" materials); *Tipograph v. Dep't of Just.*, 83 F. Supp. 3d 234, 239–40 (D.D.C. 2015) (upholding agency's declaration that grouped withheld material into two categories, "evidentiary / investigative" and "administrative" materials).

It is well-established that although Exemption 7(A) is temporal in nature, it nevertheless remains viable throughout the duration of long-term investigations. *See, e.g., Juarez v. Dep't of Just.*, 518 F.3d 54, 57 (D.C. Cir. 2008) (recognizing that an investigation that was pending in 2002 remained ongoing in 2008, even though the investigating agency had interviewed the subject of the investigation several years prior to 2008, and had—according to the subject—"showed no further interest in [her] participation in their investigation"); *Dickerson v. Dep't of Just.*, 992 F.2d

---

[2]     Due to the FBI's reasonable anticipation that a review of the remaining records will yield no releasable records and Plaintiff's desire to resolve the application of Exemption 7(A), the parties agreed that this briefing would resolve the applicability of Exemption 7(A) to the remaining records.

1426, 1431 (6th Cir. 1993) (affirming the district court's conclusion in 1991 and 1992 that FBI's investigation into the 1975 disappearance of Jimmy Hoffa remained open and pending). As the FBI explained, while the records at issue pertain to James Bulger, the records, by their nature, also pertain to other living targets of investigative interest who were associated with James Bulger. *See* Bender Decl. ¶ 59. And although James Bulger is deceased, that does not alter the applicability of Exemption 7(A). As the FBI explained, "there are ongoing efforts to recover assets related to the enterprise criminal activity to which James Bulger was a party, and/or efforts targeting other possible investigative subjects." *Id.*

### 1. Evidentiary / Investigative Materials

As mentioned above, the first functional category of withheld materials is "Evidentiary / Investigative" materials. This category includes copies of records or evidence, and derivative communications discussing or incorporating evidence. Bender Decl. ¶ 61. First, among the materials included in this category is information concerning physical and documentary evidence such as "information gathered through searches, seizures, surveillance, confidential source/witness interviews" that "[t]o more fully describe . . . could reasonably lead to disclosure of the nature of the pending investigative efforts" of the FBI. *Id.* ¶ 62. "Such a disclosure could be detrimental to success of the pending and prospective enforcement proceedings by permitting subjects to estimate the scope of the FBI's investigation and judge whether their activities are likely to be detected; allowing investigative subjects to discern the FBI's investigative strategies and employ countermeasures to avoid detection and disruption by law enforcement; and/or allow investigative targets formulate strategies to contradict evidence to be presented in Court proceedings." *Id.*; *see also Juarez*, 518 F.3d at 58 (agreeing release "would compromise the investigation as it could lead to destruction of evidence."); *Kay*, 976 F. Supp. at 38-39 (finding disclosure would harm

9

investigation because it would provide requester with insight into focus of agency's investigation and evidence, and permit him to intimidate witnesses and circumvent investigation).

Second, this category is material reflecting the exchange of information with foreign governments relative to the underlying investigative efforts. Bender Decl. ¶ 63. Releasing this information could harm the pending investigations in several ways: it would reveal FBI intelligence gaps, the types and volume of information shared with certain foreign governments, the extent and limitations of the FBI's foreign partners, and it would risk violating the understandings of confidentiality through which these foreign government agreed to share information. *Id.*

Third, the withheld records include confidential source and witness statements. Bender Decl. ¶ 64. This type of information is "one of the principal tools used in proving the facts that form the basis for a prosecution." *Id.* Releasing this information would put at risk the safety of the individuals who agreed to cooperate with law enforcement. *See id.* And doing so "could have a chilling effect on the future investigative efforts and prosecutions in this and other cases[.]" *Id.* On this, the harms associated with revealing the identities of cooperating individuals are well recognized in cases applying Exemption 7(A). *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 929 (discussing courts that have found the "likelihood of witness intimidation and evidence tampering" to be sufficient concerns under Exemption 7(A)); *Alyeska Pipeline Serv. Co.*, 856 F.2d at 311 (agreeing that disclosure might identify individuals who had assisted investigation by providing documents, and would "thereby subject them to potential reprisals and deter them from providing further information").

    2.    <u>Administrative Materials</u>

The second functional category of withheld materials is administrative materials. "[T]his category include[s] items such as case captions, serial numbers, identities of FBI field offices

involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and [Justice Department] guidelines." Bender Decl. ¶ 65.  This information is frequently contained in materials that also fall into other categories.  *Id.*  "Therefore, release of details with respect to this category of information would also reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of the investigations." *Id.*

This category includes reporting communications.  Bender Decl. ¶ 66.  These communications permit an agency to monitor the progress of the investigation and to facilitate its conduct.  *Id.*  These communications may reveal or confirm the cooperation of other local, state, or foreign agencies in the investigation.  *Id.*  These communications are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed.  *Id.*  Additionally, these communications contain background information about third party individuals, the origin of pertinent information which ties those parties to the investigation, those parties' connection with the subject and their relationship with the pending investigation.  *Id.*  The release of this information would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and solicit information from various sources and the perceived weaknesses in the investigations.  *Id.*  The release of this information would reveal the nature and scope of this pending investigations.  *Id.*

The withheld administrative materials also contain various administrative instructions. Bender Decl. ¶ 67.  These are commonly referred to as "investigative leads."  *Id.*  Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquires at various field offices or other government agencies.  *Id.*  This type

of information, whether it originates in communications from the Department of Justice, the FBI, or other law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures employed in this investigation. *Id.* Release of this information would thus permit the subject of an investigation to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions or investigations. *Id.*

Finally, withheld materials in this category contain various other miscellaneous administrative documents. Bender Decl. ¶ 68. While these materials are not solely applicable to this investigation, they were adapted or used in such a manner so as to contain information of investigative value. *Id.* One example is the envelope used to store records obtained from a confidential source. *Id.* Although the envelope itself is not specific to any ongoing investigation, handwritten notes on the envelope identify dates, places, and the persons who provided the records. *Id.* Disclosure of these materials could harm the investigation by providing details which, when viewed in conjunction with knowledge possessed by the subject, could provide information useful in identifying witnesses, investigative strategies and items of evidence. *Id.*

In sum, it is clear that all of the records withheld in their entirety—which form part of the FBI's two investigative files for ongoing matters—constitute "records or information compiled for law enforcement purposes . . . the production of [which] . . . could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A). The FBI therefore has properly invoked Exemption 7(A) to protect the two investigative files.

## II. The FBI has Satisfied its Obligation to Segregate and Release Non-Exempt Information.

Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed

unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Although the agency "must provide a 'detailed justification' for its non-segregability," it "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Off. of U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). (quoting *Mead Data*, 566 F.2d at 261).  All that is required is that the government show "with reasonable specificity" why a document cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, an agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The FBI satisfied its obligation to segregate and release non-exempt information during the "eight months" of segregability review that it conducted prior to agreement between the parties to halt review and processing of responsive records for segregable information pending the Court's decision on the applicability of Exemption 7(A).  Bender Decl. at n.1.  During that eight-month period, the FBI "located no segregable material."  *Id.*  Specifically, "[t]he FBI conducted a document-by-document review of the records processed prior to the preparation of this declaration in order to ensure that the FBI met its obligation to disclose all reasonably segregable, nonexempt information . . . [and that] review revealed no further material from the pending files can be released without jeopardizing further investigation and/or asset recovery efforts."  Bender Decl. ¶ 58.  As such, the FBI satisfied its obligation to segregate and release non-exempt information.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court grant its motion for summary judgment.

Dated: April 25, 2023
      Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: /s/ *Alex Schreiber*
    ALEXANDER SCHREIBER,
    D.C. Bar #1724820
    Special Assistant U.S. Attorney
    601 D Street, NW
    Washington, D.C. 20530
    202-252-6754
    Alexander.Schreiber@usdoj.gov

*Attorneys for the United States of America*