UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDDY MARTINEZ,

      Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

      Defendants

Civil Action No. 20-cv-3269 (APM)

## DECLARATION OF JOSEPH E. BENDER, JR.

I, Joseph E. Bender, Jr., declare as follows:

1.      I am currently serving as the Acting Section Chief (A/SC) of the
Record/Information Dissemination Section (RIDS), Information Management Division (IMD),
Federal Bureau of Investigation (FBI), Winchester, Virginia. I have served in this capacity since
March 6, 2023. When not serving as the A/SC, I am an Assistant Section Chief (ASC) in RIDS
and have served in that position since December 2020. I joined the FBI in October 2003 and,
prior to my current position, I was an Acting ASC in RIDS from June 2020 to December 2020;
Unit Chief, RIDS National Security Unit, from January 2017 to June 2020; and an Assistant
General Counsel (2003-2006) and Unit Chief (2006-2017), FBI Office of the General Counsel,
National Security and Cyber Law Branch. In those capacities, I provided legal support to
operational units of the FBI's National Security Branch. Prior to joining the FBI, I served as a
trial attorney in the U.S. Department of Justice, Tax Division, Southern Criminal Enforcement
Section. In that role, I participated in federal criminal enforcement prosecutions. I am an attorney

1

licensed in North Carolina and the District of Columbia.

2.     In my official capacity as A/SC of RIDS, I supervise approximately 238 FBI employees, supported by approximately 99 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA) as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act (PA) of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.     Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4.     The FBI submits this declaration in support of Defendant's Motion for Summary Judgment.  Part I of this declaration provides the Court and Plaintiff with a summary of the administrative history of Plaintiff's request.  Part II provides a description of the FBI's

2

recordkeeping system and the procedures used to search for and review records subject to the FOIA and responsive to Plaintiff's request.  Part III provides the FBI's justification for categorically denying records pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).[1]

## PART I:  ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

### FBI FOIPA REQUEST NUMBER 1421028

5.      By electronic FOIA ("eFOIA")[2] dated October 31, 2018, Plaintiff submitted a FOIPA request to the FBI seeking any and all records pertaining to "James (Whitey) Bulger (September 3, 1929 – October 30, 2018)." **(Ex. A.)**

6.      By letter dated November 5, 2018, the FBI acknowledged receipt of Plaintiff's FOIA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1421028.  The FBI also informed Plaintiff of the following: Plaintiff submitted his request via the FBI's eFOIPA system; the FBI determined it was compliant with the eFOIPA terms of service, and future correspondence about the request would be provided electronically; and for the purpose of assessing any fees, the FBI determined Plaintiff would be charged applicable duplication fees as a general (all other) requester.  Additionally, the FBI informed Plaintiff he could check the status of his request and/or contact the FBI with any questions at

---

[1] Following the FBI's initial production of records that were not categorically exempt under Exemption 7(A), the FBI conducted reviews of documents located in pending investigatory files to determine whether any segregable material existed. After eight months of such reviews, the FBI located no segregable material that was not exempt from disclosure pursuant to FOIA Exemption 7(A) and determined that numerous underlying exemptions were also applicable. While additional material exists, Plaintiff and Defendant agreed to halt the FBI's review of this material and brief the appropriateness of the FBI's overall assertion of Exemption 7(A) while maintaining the FBI's ability to assert other potential underlying exemptions at a later date. As this declaration is limited to the 7(A) issue, additional underlying exemptions are not being described at this time.

[2] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI, online, through the FBI's public website, www.FBI.gov.

www.fbi.gov/foia.  Furthermore, Plaintiff could appeal the FBI's response to the DOJ, Office of

Information Policy (OIP) within ninety (90) days of its letter, contact the FBI's public liaison,

and/or seek dispute resolution services by contacting the Office of Government Information

Services (OGIS).  **(Ex. B.)**

7.      By letter dated November 19, 2018, the FBI advised Plaintiff that unusual

circumstances applied to the processing of his request and would delay the FBI's ability to make

a determination on the request within 20 days.  The FBI advised Plaintiff unusual circumstances

could include one or more of the following scenarios: a need to search for and collect records

from field offices and/or other offices that are separate from RIDS; a need to search for, collect,

and examine a voluminous amount of separate and distinct records; and/or there is a need for

consultation with another agency or two or more DOJ components.  Furthermore, the FBI

advised Plaintiff if he would like to discuss reducing the scope of the request or discuss

willingness to pay search and duplication costs, he should advise the FBI in writing.  The FBI

advised Plaintiff reducing the scope of the request would accelerate the process and could

potentially place the request into a quicker processing queue. The FBI informed Plaintiff he

could appeal the FBI's determination by filing an administrative appeal with DOJ/OIP within

(90) days from the date of its letter.  **(Ex. C.)**

8.      By email dated November 20, 2018, Plaintiff responded by notifying the FBI that

he did not wish to reduce the scope of the request and requested a fee waiver as a journalist

conducting research for the purpose of informing the public about the life of Whitey Bulger.

**(Ex. D.)**

## PART II:  THE FBI'S SEARCH FOR RECORDS RESPONSIVE UNDER THE FOIA

### THE FBI'S CENTRAL RECORDS SYSTEM

9.      Given the nature of Plaintiff's request seeking records on James Bulger, a subject reasonably expected to be indexed within the automated indices available and/or accessed via Sentinel (*see* ¶16, infra), and the comprehensive nature of the information contained in the Central Records System (CRS) (*see* ¶11, infra), the CRS is the FBI system of records where responsive records could reasonably be expected to be found.[3]

10.     The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices (legats) worldwide.

11.     The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subjects. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential

---

[3] James "Whitey" Bulger is a former "Ten Most Wanted" fugitive.  In June 2011, Bulger was arrested thanks to a tip from the public, just days after a news media campaign was announced by the FBI to help locate the gangster who had been on the run for 16 years.  He was convicted in August 2013.  *See* https://www.fbi.gov/wanted/topten/topten-history/hires_images/FBI-458-JamesJBulger.jpg/view *(last accessed April 5, 2023).*

components: (a) the CRS file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular subject matter.[4] Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order.

*The Central Records System's General Indices and Indexing*

12.    The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS. The CRS is indexed in a manner that meets the FBI's investigative needs and priorities and allows FBI personnel to locate pertinent files. The general indices comprise multiple indices, including Sentinel (described below), on a variety of subject matters to include individuals, organizations, events, and other subjects of investigative interest that are indexed for future retrieval, comparable to a digital version of a library's card catalog. The entries in the general indices fall into two categories:

13.    Main entry: A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation. Main subjects are identified in the case title of a file.

14.    Reference entry: A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but who or which is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file.

15.    FBI personnel index information in the CRS by individuals (persons), by

---

[4] For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO, and "56789" indicates the assigned case specific file number.

organizations (entities, places, or things), or by event (e.g., a terrorist attack or bank robbery). FBI personnel index information in the CRS when information is deemed of sufficient significance to necessitate indexing for future retrieval.[5] Accordingly, the FBI does not index every individual name or other subject matter.

*Sentinel*

16.     Sentinel is the FBI's case management system. Since July 1, 2012, FBI personnel create case records in, upload to, and manage CRS records via the Sentinel case management system. Prior to Sentinel, the FBI relied upon a different case management system known as Automated Case Support (ACS).[6] On August 1, 2018, ACS was decommissioned, and the ACS indices were migrated into Sentinel, where they remain accessible through Sentinel's indices search function. The Sentinel indices search function provides access to indexed information from both Sentinel and the migrated ACS indices, both of which are searchable by selecting the appropriate indices search function within Sentinel. Sentinel also provides a means for FBI personnel to access the FBI's older manual indices.

17.     Prior to the implementation of ACS, the FBI relied on manual indices to the CRS, which originally consisted of 3"x 5" paper index cards, filed alphabetically based on subject matter (individual, event, organization, or other topic of investigative or administrative interest to the FBI) and scattered across the FBI in various locations. The index cards contained the subject

---

[5] FBI's Records Management Policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. FBI personnel are responsible for managing records they create and receive, determining the record status for each, and importing records into an electronic recordkeeping system such as Sentinel. *See* FBI Records Management Policy Guide, 0769PG (Jun. 4, 2015) at 7-8, 22 (Sections 2.8 and 4.8.14-15, 17).

[6] As part of the ACS implementation process, over 105 million pre-existing CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.

of interest and the file number(s) where the subject's information was located. Reference entries and some main entries contained more specific information, such as the serial numbers within files. The FBI's 1995 ACS consolidation did not capture all of the FBI's manual indices, and as a result, not all of the FBI's manual indices migrated with ACS into Sentinel in August 2018. Instead, the manual indices were digitized, using optical character recognition technology, and Sentinel now provides a conduit to access and search the manual indices electronically.

     18.     FBI personnel rely on Sentinel to locate records and documents to fulfill essential functions, such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries; and security screening, to include presidential protection.[7] CRS records, whether previously indexed via ACS or Sentinel, are located using the search function available within Sentinel. Sentinel also provides a conduit through which FBI personnel can access and search the manual indices to locate files.[8] Sentinel's

---

[7] The electronic surveillance (ELSUR) indices contain records related to electronic surveillance sought and conducted by the FBI since January 1, 1960. *See* Privacy Act System of Records Notice JUSTICE/FBI-006; 72 F.R. 3410. The ELSUR indices include records of: (a) targeted individuals and entities pursuant to court order, consensual monitoring, or other authority; (b) owners, lessors, or licensors of the premises or facilities where the FBI sought to conduct electronic surveillance; and (c) individuals identified as participants in monitored and recorded conversations. Similar to other prior automated records systems, the ELSUR indices have been incorporated into the CRS. For clarity, while the ELSUR indices have a distinct legal identity from the CRS as a different Privacy Act System of Records, in terms of function, information from the ELSUR indices is indexed in the CRS and retrieved via index searches of the automated Sentinel and ACS indices search functions available within Sentinel.

[8] The FBI searches the FBIHQ manual indices when information is sought on an individual born before January 1, 1958, or the subject of the request is an event or activity that occurred before January 1, 1973. The FBI searches specific field office manual indices when information is sought on an individual born before June 30, 1973, or the activities of the individual were centered in one area of the country and likely took place before June 30, 1973, or when information is sought on an event or organization that was centered in a specific area/locality, and the activities took place before June 30, 1988. The FBI conducts a search of specific manual indices of legats when the requester seeks records on an individual born before October 16, 1980, or the activities of the individual were centered in one area of the country, and likely took place before October 16, 1980, or the requester seeks information on an event or organization,

index search methodology and function allow FBI personnel to query the CRS for indexed

subjects in case files.

ADEQUACY OF SEARCH

*Central Records System Search and Results*

19.     The FBI determined a search of the CRS automated indices, available within

Sentinel via the Sentinel/ACS search function and the Manual indices, accessed via Sentinel,

represents the most reasonable means for the FBI to locate records potentially responsive to

Plaintiff's FOIA request. This is because the automated indices provide access to a

comprehensive, agency-wide set of indexed data on a wide variety of investigative and

administrative subjects and consist of millions of searchable records that are updated daily with

newly indexed information.

20.     In response to Plaintiff's request, the FBI, via RIDS, conducted a search for main

and reference entries in the Sentinel/ACS indices via Sentinel's search function. The FBI

searched the indices using the following terms: "James Bulger" and "Whitey Bulger". The FBI

employed a search cut-off date of October 30, 2018 and located numerous responsive records.

Among these records were files which are categorically exempt (b)(7)(A). The FBI determined a

search of these indices could reasonably locate records responsive under the FOIA for the

following reasons:

21.     The requested subject matter predates and/or overlaps the implementation of both

Sentinel and ACS, requiring a manual indices search. The FBI built on its Manual index search

---

centered in a specific area/locality, and the activities of the organization took place before
October 16, 1995. Furthermore, the FBI searches the relevant manual indices (FBIHQ, field
office, or relevant legat office) in situations where the CRS search provides a clear and
identifiable lead that such records exist.

by conducting an index search of both the ACS and Sentinel indices to ensure it captured all relevant data indexed after the implementation of ACS and Sentinel.

22.     Plaintiff has provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside outside the CRS. There is no indication from the CRS index search efforts that responsive material would reside in any other FBI system or location; therefore, there is no basis for the FBI to conclude that a search elsewhere could reasonably be expected to locate responsive material subject to the FOIA.

23.     The identification of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive to the subject. Index searches using the search functions available in the Sentinel case management system are how potentially responsive records are located, but ultimately, a FOIPA analyst must review potentially responsive records against the specific parameters of individual requests.[9] Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

## PART III:  JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

### EXEMPTION 7 THRESHOLD

24.     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law

---

[9] Although many Sentinel created records are electronically available and accessible within the Sentinel case management system, many older records are located using the indices, but obtained from a separate location because they remain in paper format. For these older records, the indices accessed via the Sentinel Case Management System, are the means by which the FBI locates the record. An FBI employee must then request the physical record from the location indicated in the indices before determining if the record is responsive to the request.

enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose.

25.     The records at issue were compiled in furtherance of the FBI's investigation of enterprise criminal activity to which James Bulger was a party. Though James Bulger is deceased, the pending records also pertain to other living targets of investigative interest who were associated with James Bulger, as well as ongoing asset recovery efforts. Considering these records were compiled to document the FBI's investigation of potential crimes, the FBI determined they were compiled for law enforcement purposes.

EXEMPTION 7(A)

PENDING LAW ENFORCEMENT PROCEEDINGS

26.     Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

27.     Application of this exemption requires:  the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding.  Often,

the FBI asserts Exemption 7(A) categorically to withhold a variety of different documents in an

investigative file, which the FBI then groups into functional categories and describes in greater

detail. The release of this information would reveal unknown information concerning pending

enforcement proceedings.  The FBI determined release of any of this material would provide

criminals with information about the government's investigation/enforcement strategies in

ongoing matters, allow them to predict and potentially thwart these strategies, and/or allow them

to discover/tamper with witnesses and/or destroy evidence.  As such, revealing this information

could reasonably be expected to interfere with pending enforcement proceedings.  Thus, the FBI

has applied Exemption 7(A) to protect this information.

TYPES OF LAW ENFORCEMENT RECORDS

28.    As a result of its document-by-document review, the FBI determined the

responsive pending investigative files contain the following types of records:

29.    Interview Forms (Form FD-302): FD-302s are internal FBI forms in which

evidence is often documented, usually the results of FBI interviews. Such evidence and/or

interview information may later be used as testimony or evidence in court proceedings/trials.

Additionally, these evidence/interview forms are often incorporated in other FBI documents

which disseminate intelligence/investigative information and can be utilized to set leads in

furtherance of the FBI's investigative efforts.

30.    Form FD-1057 and Electronic Communications ("ECs"): FD-1057s and ECs

replaced the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle

of correspondence within the FBI. The purpose of an EC is to communicate within the FBI in a

consistent format that can be uploaded by the originating Division or office, transmitted, and

downloaded by recipient divisions or offices within the FBI's internal computer network. These

12

forms are often utilized to record and disseminate intelligence/investigative information and for general investigation administration purposes.

31.     <u>Surveillance Records and Surveillance Logs</u>: These types of documents are utilized to document physical surveillance ("FISUR") of investigative subjects. These surveillance logs include subjects/activities of subjects observed, the times these observations occurred, and the FBI personnel conducting the FISUR. These surveillance logs are often used as evidence, are incorporated in other FBI documents which disseminate intelligence/investigative information and are utilized to set leads in furtherance of the FBI's investigative efforts.[10]

32.     <u>FD-759 (Electronic Monitoring not Requiring a Court Order)</u>: This form authorizes monitoring of communications for which a court order or warrant is not legally required because of the consent of a party to the communication.

33.     <u>Photographs</u>: This category consists of photographs taken and/or collected during the FBI investigations.

34.     <u>Handwritten Interview Notes</u>: These are the original handwritten notes of FBI personnel who conducted interviews during the FBI's investigations. These notes are typically transposed into FD-302s and are utilized by the FBI in the same manner.

35.     <u>FD-26 – Consent to Search Forms</u>: These documents were provided to and signed by individuals who consented to FBI searches of their persons/property.

36.     <u>Miscellaneous Evidentiary Documents</u>: This category consists of any miscellaneous evidentiary documents that were gathered during the FBI investigations. The information in these documents is often incorporated in other FBI documents which disseminate

---

[10] "Leads" are internal communications that require a response or action from another FBI Division, Field Office, Unit, or specific Bureau employee.

intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's

investigative efforts.

37.     FD-5 Serial Charge Outs: These are administrative documents that explain why

certain serials have been removed/replaced within FBI files. Documents contained in an FBI

investigative file are added sequentially and are colloquially referred to as "serials." Whenever

serials are removed from this sequential order, charge-out slips are inserted to explain the

absence of the serials and take their place. Serials from an FBI file can be charged out for several

reasons. For example, a serial would be charged out if it were inadvertently added to the case and

was removed for inclusion in the correct case file or if the serial was removed from one portion

of the file and added elsewhere (such as a serial or group of serials being removed and added to a

subfile within the same investigation).

38.     Internet Printouts: These documents consist of information that was located and

printed from public websites. Though gathered from public sources, this type of information can

be treated as evidentiary, can be incorporated in documents disseminating investigatory

information, and can be used to set leads to further FBI investigations.

39.     Computer/Telephone Examination Documents/Evidence: This category consists

of evidence gathered and any reports resulting from analyses of computers, telephones, and

similar digital media. These types of evidence can be used as evidence in court proceedings, are

often incorporated in other FBI documents which disseminate intelligence/investigative

information and can be utilized to set leads in furtherance of the FBI's investigative efforts.

40.     FBI Records Checks: These documents are printouts of queries of internal FBI

databases. These documents are often incorporated in other FBI documents which disseminate

intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's

investigative efforts.

41.     Federal Grand Jury Subpoenas/Subpoenaed Information: These documents consist of Federal Grand Jury Subpoenas and the documents collected as a result of these subpoenas. This information can be used as evidence in Grand Jury proceedings or other court proceedings. This information can also be incorporated in FBI documents which disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts.

42.     Memoranda: These are ordinarily communications to DOJ officials, from one person to another at FBIHQ, or from one person to another within an FBI field office. They serve to assist in the overall supervision of a case by summarizing pertinent details of an investigation.

43.     Other Government Agency Information: These are documents provided to the FBI by other federal government agencies. This information can be incorporated in FBI documents which disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts.

44.     Miscellaneous Administrative Documents: This category consists of all informal, internal documents utilized to administer FBI coordination and investigation administration.

45.     FD-1036 – Sentinel Import Forms: These are administrative forms attached to documents that are imported into the FBI's case administrative system, Sentinel.

46.     Foreign Government Information: These are documents that were provided to the FBI by foreign governments and/or document communications between the FBI and foreign partners. The information within these documents can be incorporated in FBI documents which disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts.

47.    Laboratory Forms/Reports: These are documents prepared by the FBI with a description of material submitted to the laboratory, or reports prepared by FBI laboratory personnel documenting their findings following testing of material submitted to the laboratory. This information can be used as evidence in court proceedings, can be incorporated in FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts.

48.    FD 1023 – CHS Reporting Documents: These standard forms document reporting to the FBI by Confidential Human Sources ("CHS"). This CHS-provided information may later be used as testimony or evidence in court proceedings, including trials. Additionally, this information can be incorporated in other FBI documents which disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts.

49.    Teletypes: Teletypes are an electronic means of disseminating law enforcement/intelligence information between FBI field offices, FBIHQ and the United States intelligence and law enforcement agencies.

50.    Electronic Mail Messages (E-mails): These documents consist of e-mails between FBI personnel, between FBI personnel and private citizens/corporations, between FBI personnel and Other Government Agency (OGA) personnel, and/or between FBI personnel and state and local law enforcement agencies.

51.    FD-71 Complaint Form: Forms used to document complaints from the public pertaining to possible violations of federal law.

52.    FD-515 (Investigative Accomplishment Form): This is an internal FBI form on which employees claim accomplishments and document the investigative methods used in

investigations.

53.    Evidence Log: This administrative form is used to describe, document, and track

each type/item of evidence gathered or obtained by the FBI during an investigation.

54.    FD-498 (Polygraph Report): Report containing the results and summary of a

polygraph examination.

55.    FD-597 (Receipt of Property): This form is used to itemize and document

items/property seized, received from, returned to, or released to an individual during an

investigation.

56.    Other Investigative Documents: This category consists of various types of

documents reflecting information and evidence gathered during an FBI investigation, the sources

from/by which such information and evidence was gathered, methods used to obtain the

information and evidence, and methods used to analyze the information and evidence. These

records include documents from other government agencies that are pertinent to the FBI's

ongoing investigation. To describe these investigative documents in this category with more

specificity would reveal the scope of the FBI's investigations, as well as the sources and methods

being utilized by the FBI, and present harms protected against by Exemption 7(A).

PENDING LAW ENFORCEMENT PROCEEDINGS

57.    Material responsive to Plaintiff's request is located in files of ongoing

investigations. Release of any information from these files could reasonably be expected to

interfere with these pending criminal law enforcement proceedings, as well as interconnected

enforcement proceedings, additional investigative efforts that branch from these investigative

efforts, and/or prosecutions that may result from the investigations. Until the potential and

pending enforcement proceedings are concluded and resolved, no information contained in these

17

files can be released to Plaintiff without interfering in pending or prospective enforcement proceedings.

REASONABLE EXPECTATION OF INTERFERENCE

58.    In processing requests under the FOIA, the FBI has established procedures allowing it to implement the FOIA as efficiently as possible. When a request is received for records related to an ongoing FBI investigation, the FBI commonly asserts FOIA Exemption (b)(7)(A) in response to such a request, but the FBI segregates and releases information related to the pending investigation where release would not jeopardize future investigative or prosecutive efforts. Here, as part of the segregation process, the FBI reviewed the responsive records in an effort to identify those that were not categorically exempt pursuant to Exemption (b)(7)(A) and provided those pages in its initial production of records, which resulted in the release, either in full or in part, of 1829 pages to Plaintiff.  Further, even though the Parties have agreed to halt review and processing of responsive records for segregable information pending the Court's decision on the applicability of Exemption (b)(7)(A),[11] the FBI conducted a document-by-document review of the records processed prior to the preparation of this declaration in order to ensure that the FBI met its obligation to disclose all reasonably segregable, nonexempt information.  This review revealed no further material from the pending files can be released without jeopardizing further investigation and/or asset recovery efforts.

59.    Any release of information from these files to Plaintiff would be premature and

---

[11] As noted in the February 27, 2023 Joint Status Report, the Parties have agreed that while the issue of the applicability of Exemption 7(A) is pending, the FBI will halt review and processing of responsive records for segregable information as well as for underlying exemptions without waiving its right to assert those exemptions at a later time. *See* ECF No. 30.

likely to cause harm. While the pending records at issue pertain to James Bulger, a deceased

individual, the records, by their nature, also pertain to other living targets of investigative interest

who were associated with James Bulger, and/or would reveal the scope of pending FBI

investigative efforts. RIDS confirmed with the FBI investigators pursuing these matters that

though James Bulger is deceased, there are ongoing efforts to recover assets related to the

enterprise criminal activity to which James Bulger was a party, and/or efforts targeting other

possible investigative subjects. Release of these records would allow targeted individuals and/or

foreign adversaries to critically analyze documents concerning these investigations. Such

individuals/adversaries possess the unique advantage of knowing the details surrounding the

potential criminal activities, the identities of potential witnesses, and the direct and

circumstantial evidence of the potential criminal activities. These individuals could therefore use

the released information to their advantage to destroy evidence, intimidate potential witnesses,

and/or evade the FBI's investigative and asset recovery efforts. In this regard, the following

potential harms from the release of information contained in these documents exist:

     a.   the identification of individuals, sources, and potential witnesses who possess

          information relative to the investigation and possible harm to, or intimidation of,

          these individuals;

     b.   the use of released information to counteract evidence developed by investigators,

          alter or destroy potential evidence, or create false evidence; and

     c.   the use of released information to frustrate the FBI's ongoing asset recovery

          activities.

These harms are possible because once a release is made to any requester under the FOIA, use

and dissemination of the information to third parties is unrestricted. Therefore, there is a risk that

any released records could end up in the hands of those targeted by these pending law

enforcement efforts.

CATEGORIES OF INFORMATION

60.    The FBI has grouped the records into functional categories for the purpose of

demonstrating why the information is exempt from disclosure under FOIA Exemption 7(A).

Each responsive withheld document falls into either the evidentiary/investigative materials

category or the administrative materials category.  The evidentiary/investigative materials and

the administrative materials functional categories are further subdivided below.  In some

instances, one document may serve multiple purposes and may contain multiple categories of

information, such as witness statements, administrative directions or evidentiary materials. This

document could, therefore, be included in multiple categories as could the information contained

within the document.

*Category I: Evidentiary/Investigative Materials*

61.    This category includes copies of records or evidence, and derivative

communications discussing or incorporating evidence. A derivative communication describes,

verbatim or in summary, the contents of the original record, how it was obtained, and how it

relates to the investigation. Other derivative communications report this information to other FBI

Field Offices or other law enforcement agencies, either to advise them of the progress of the

investigation, or to elicit their assistance in handling investigative leads. The following

subparagraphs describe the types of evidentiary material in the responsive records and the

anticipated harm that could foreseeably result from the release of such materials.

62.    <u>Information Concerning Physical and Documentary Evidence</u>: Information

concerning physical and documentary evidence in this file may include records obtained through

20

and/or summarizing information gathered through searches, seizures, surveillance, confidential

source/witness interviews, Federal Grand Jury subpoenas, laboratory reports, and any other law

enforcement/intelligence gathering activities. To more fully describe these records could

reasonably lead to disclosure of the nature of the pending investigative efforts to which these

records pertain. Such a disclosure could be detrimental to the success of the pending and

prospective enforcement proceedings by permitting subjects to estimate the scope of the FBI's

investigation and judge whether their activities are likely to be detected; allowing investigative

subjects to discern the FBI's investigative strategies and employ countermeasures to avoid

detection and disruption by law enforcement; and/or allow investigative targets to formulate

strategies to contradict evidence to be presented in Court proceedings.

63.    <u>Exchange of Information with Foreign Governments</u>: Release of the FBI's

exchanges of information with Foreign Governments in relation to the documents at issue could

cause four distinct harms to the pending investigative efforts to which these records pertain.

First, release of this type of information would reveal FBI intelligence gaps by revealing the

types of information the FBI desired to obtain from cooperating foreign law

enforcement/intelligence agencies. Criminals could use this information to judge whether or not

the FBI has detected their criminal behaviors and/or whether or not they need to destroy

evidence/deploy countermeasures to avoid further investigative efforts. Second, revealing the

types of information shared between the FBI and its foreign partners would reveal the types and

volume of information shared between the FBI and certain foreign governments and thus the

extent to which traveling internationally may benefit criminals/criminal organizations involved

in the pending investigations. Third, releasing this type of information would also reveal the

extent and limitations of the FBI's foreign partners. Whether releasing information concerning

these foreign partners' efforts to elicit information from the FBI and/or releasing any relevant information provided to the FBI by these foreign governments, disclosure of these foreign governments' information would provide criminals with details concerning the scope, strengths, and weaknesses of these foreign governments' investigative efforts. This would allow criminals to judge whether, when, and how their criminal activities have or will come under scrutiny by the FBI and cooperating foreign law enforcement/intelligence agencies. Fourth, information shared between the FBI and its foreign partners is done so with the understanding that the FBI's relationships with these foreign agencies and the information shared will remain confidential. Revealing this information would damage these relationships, potentially staunch the free flow of pertinent investigative information between the FBI and its foreign partners and hinder the FBI's ability to investigate any international crimes under scrutiny in the pending investigative efforts at issue.

64.     <u>Confidential Source and Witness Statements</u>: Confidential source and witness statements are one of the principal tools used in proving the facts that form the basis for a prosecution. These statements contain information obtained from confidential informants, records custodians, and other third-party individuals who have knowledge of the criminal enterprise activities at issue in the FBI investigations. If this information were released, the witnesses and/or confidential sources that have chosen to cooperate with law enforcement could be subjected to retaliation, intimidation, or physical or mental harm. This could have a chilling effect on the future investigative efforts and prosecutions in this and other cases inasmuch as potential witnesses and/or confidential sources might fear exposure and reprisals from the

subjects of these investigations.[12] Implicit in conducting interviews in investigations of this nature is the notion that an individual's identity and the information provided by them will be afforded confidentiality. The FBI goes to great lengths to protect and maintain an individual's confidentiality since it is an integral part of a successful investigation and prosecution. The release of witness statements and confidential source statements would disrupt and harm future investigative and/or prosecutive actions.

*Category II:  Administrative Materials*

65.     Materials that fall into this category include items such as case captions, serial numbers, identities of FBI field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines. The following subparagraphs describe the types of administrative materials contained in this file and the anticipated harm that could reasonably result from the release of such materials. In many instances, administrative information is contained in correspondence or documents that also fall into other categories. Therefore, release of details with respect to this category of information would also reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of the investigations.

66.     <u>Reporting Communications</u>: These communications permit the FBI and/or other agencies to monitor the progress of the investigation and to facilitate its conduct. These communications may reveal or confirm the cooperation of other local, state, or federal agencies in the investigation. They are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be

---

[12] Individuals cooperating with law enforcement in these types of cases have been subject to harassment and have been threatened with harm up to and including death threats when their cooperation has become public.

interviewed. Additionally, they contain background information about third party individuals, the origin of pertinent information that ties them to the investigation, their connection with the subjects, and their relationship with the pending investigation. The release of this information would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and/or solicit information from various sources, and the perceived weaknesses in the investigation. The release of this information would reveal the nature and scope of pending investigatory activity.

67.    <u>Administrative Instructions</u>: This type of information, whether it originates in communications from DOJ, the FBI, or other domestic or foreign law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures and strategies employed in this investigation. Release of this information would thus permit the subjects of these investigations to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions/investigative efforts. Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquiries at various FBI field offices or other government agencies. These instructions are commonly referred to as "investigative leads" and are set forth throughout the course of FBI investigations.

68.    <u>Miscellaneous Administrative Documents</u>: These types of materials were used throughout this investigation for many routine purposes. While these materials are not solely applicable to this investigation, they were adapted or used in such a manner so as to contain information of investigative value. An example is the envelope used to store records obtained from a confidential source. While the envelope is not specific to this investigation, handwritten notations on the envelope identify dates, places, and the persons who provided the records. The

disclosure of these materials could harm the investigation by providing details which, when viewed in conjunction with knowledge possessed by the subjects, could provide information useful in identifying witnesses, investigative strategies, legal information, and items of evidence.

## CONCLUSION

69.     The FBI performed adequate and reasonable searches for responsive records and properly categorically denied access to pending investigatory records responsive to Plaintiffs' request for James Bulger as releasing any information from pending investigatory files would present harms protected against by FOIA Exemption 7(A).  Specifically, the FBI determined the investigations memorialized in these records are still pending and release of any of this information would endanger pending or prospective enforcement proceedings. Accordingly, this material is appropriately withheld pursuant to FOIA Exemption 7(A).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through D attached hereto are true and correct copies.

Executed this 25th day of April 2023.

JOSEPH E. BENDER, JR
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDDY MARTINEZ,

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

Defendants

Civil Action No. 21-cv-3269 (APM)

# **Exhibit A**

12/14/2020                                    EMailCorrespondence.html

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2018-10-31T05:30:47.189439+00:00 Status: pending Message:

## Individual Information

| | |
|---|---|
| **Prefix** | |
| **First Name** | Freddy |
| **Middle Name** | |
| **Last Name** | Martinez |
| **Suffix** | |
| **Email** | 63092-18118896@requests.muckrock.com |
| **Phone** | |
| **Location** | United States |

## Domestic Address

| | |
|---|---|
| **Address Line 1** | MuckRock News , 411A Highland Ave |
| **Address Line 2** | DEPT MR 63092 |
| **City** | Somerville |
| **State** | Massachusetts |
| **Postal** | 02144 |

## Agreement to Pay

| | |
|---|---|
| **How you will pay** | I am limiting my request to the free two hours of searching and 100 duplicated pages. I am not willing to pay additional fees. |

# Deceased Individual

| | |
|---|---|
| **Prefix** | |
| **First Name** | James |
| **Middle Name** | |
| **Last Name** | Bulger |
| **Suffix** | |
| **ARN** | |
| **SSN** | |
| **FBI Number** | |
| **Date of Birth** | 1929/09/03 |
| **Place of Birth** | |
| **Date of Death** | 2018/10/30 |

12/14/2020                                               EMailCorrespondence.html

| **Additional Information** | To Whom It May Concern:<br><br>Pursuant to the Freedom of Information Act, I hereby request the following records:<br><br>All documents mentioning James (Whitey) Bulger (September 3, 1929 – October 30, 2018), a former South Boston Mobster, whose death was widely reported in the media.<br><br>Please find evidence of his death attached and reported by the New York Times:<br>https://www.nytimes.com/2018/10/30/obituaries/whitey-bulger-dead.html<br><br>The requested documents will be made available to the general public, and this request is not being made for commercial purposes.<br><br>In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.<br><br>Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires.<br><br>Sincerely,<br><br>Freddy Martinez |
| **Supporting documentation** | Screen20Shot202018-10-3020at202.08.2920PM.png |

----END MESSAGE----

The New York Times

*Whitey Bulger Is Dead in Prison at 89; Long-Hunted Boston Mob Boss*



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDDY MARTINEZ,

       Plaintiff,

       v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

       Defendants

Civil Action No. 21-cv-3269 (APM)

# **Exhibit B**



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 5, 2018

MUCKROCK NEWS
DEPARTMENT MR 63092
411A HIGHLAND AVENUE
SOMERVILLE, MA 02144

FOIPA Request No.: 1421028-000
Subject: BULGER, JAMES JOSEPH, JR.

Dear Mr. Martinez:

     This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

☑   Your request has been received at FBI Headquarters for processing.

☐   Your request has been received at the _____ Resident Agency / _____ Field Office and forwarded to FBI Headquarters for processing.

☑   You submitted your request via the FBI's eFOIPA system.

        ☑   We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIA request will be provided in an email link.

        ☐   We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIPA request will be sent through standard mail.

☐   The subject of your request is currently being processed and documents will be released to you upon completion.

☐   Release of responsive records will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☐   Your request for a public interest fee waiver is under consideration, and you will be advised of the decision at a later date. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑   For the purpose of assessing any fees, we have determined:

        ☐   As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

        ☐   As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

        ☑   As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:   https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Information Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDDY MARTINEZ,

        Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

        Defendants

Civil Action No. 21-cv-3269 (APM)

# **Exhibit C**



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 19, 2018

MUCKROCK NEWS
DEPARTMENT MR 63092
411A HIGHLAND AVENUE
SOMERVILLE, MA 02144

FOIPA Request No.: 1421028-000
Subject: BULGER, JAMES JOSEPH, JR.

Dear Mr. Martinez:

Please be advised that "unusual circumstances" apply to the processing of your request.  See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).

There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.

There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays).   Additionally, the payment of pertinent fees may apply to your request.  See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request.  See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue.  This may also reduce search and duplication costs and allow for a more timely receipt of your information.   The FBI uses a multi-queue processing system to fairly assign and process new requests.   Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request and your willingness to pay the estimated search and duplication costs indicated above.   Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time.   Mail your response to: **Work Process Unit; Record Information/Dissemination Section; Information Management Division; Federal Bureau of Investigation; 170 Marcel Drive; Winchester, VA 22602**.   You may also fax your response to: 540-868-4997, Attention: Work Process Unit.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Information Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDDY MARTINEZ,

      Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

      Defendants

Civil Action No. 21-cv-3269 (APM)

# **Exhibit D**

## FOIPAQUESTIONS

| | |
|---|---|
| **From:** | 63092-18118896@requests.muckrock.com |
| **Sent:** | Tuesday, November 20, 2018 4:41 PM |
| **To:** | FOIPAQUESTIONS |
| **Subject:** | RE: Freedom of Information Act Request: FOIA - FBI - Whitey Bulger |

Federal Bureau of Investigation
FOIA Office
170 Marcel Drive
Winchester, VA 22602-4843

November 20, 2018

This is a follow up to a previous request:

FBI FOIA Director,

I do not wish to narrow the scope of my request. Please send us a fee estimate for this file. We additionally request a fee waiver as I am a journalist who is researching this for the purposes of informing the public about the life of Whitey Bulger.

Best,
Freddy Martinez

Filed via MuckRock.com
E-mail (Preferred): 63092-18118896@requests.muckrock.com
Upload documents directly: https://www.muckrock.com/accounts/agency_login/federal-bureau-of-investigation-10/foia-fbi-whitey-bulger-63092/?email=foipaquestions%40ic.fbi.gov&uuid-login=9536c967-c922-479c-bb2c-ac7b50bef37b#agency-reply
Is this email coming to the wrong contact? Something else wrong? Use the above link to let us know.

For mailed responses, please address (see note):
MuckRock News
DEPT MR 63092
411A Highland Ave
Somerville, MA 02144-2516

PLEASE NOTE: This request is not filed by a MuckRock staff member, but is being sent through MuckRock by the above in order to better track, share, and manage public records requests. Also note that improperly addressed (i.e., with the requester's name rather than "MuckRock News" and the department number) requests might be returned as undeliverable.

---

On Nov. 20, 2018:
There are eFOIA files available for you to download.
---

On Nov. 6, 2018:
There are eFOIA files available for you to download.
---

On Oct. 30, 2018:

To Whom It May Concern:

Pursuant to the Freedom of Information Act, I hereby request the following records:

All documents mentioning James (Whitey) Bulger (September 3, 1929 – October 30, 2018), a former South Boston Mobster, whose death was widely reported in the media.

Please find evidence of his death attached and reported by the New York Times:
https://www.nytimes.com/2018/10/30/obituaries/whitey-bulger-dead.html

The requested documents will be made available to the general public, and this request is not being made for commercial purposes.

In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires.

Sincerely,

Freddy Martinez

Filed via MuckRock.com
E-mail (Preferred): 63092-18118896@requests.muckrock.com
Upload documents directly: https://www.muckrock.com/accounts/agency_login/federal-bureau-of-investigation-10/foia-fbi-whitey-bulger-63092/?email=foipaquestions%40ic.fbi.gov&uuid-login=9536c967-c922-479c-bb2c-ac7b50bef37b#agency-reply
Is this email coming to the wrong contact? Something else wrong? Use the above link to let us know.

For mailed responses, please address (see note):
MuckRock News
DEPT MR 63092
411A Highland Ave
Somerville, MA 02144-2516

PLEASE NOTE: This request is not filed by a MuckRock staff member, but is being sent through MuckRock by the above in order to better track, share, and manage public records requests. Also note that improperly addressed (i.e., with the requester's name rather than "MuckRock News" and the department number) requests might be returned as undeliverable.

